THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
NO. 2:08-CV-20-FL

| | |
|---|---|
| BOBBIE J. WHITE, | ) |
| | ) |
| Plaintiff/Claimant, | ) |
| | ) |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, Commissioner | ) |
| of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND
RECOMMENDATION**

This matter is before the Court on the parties' cross motions for judgment on the
pleadings pursuant to FED. R. CIV. P. 12(c). Claimant Bobbie J. White ("Claimant") filed this
action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her
applications for a period of disability, Disability Insurance Benefits ("DIB") and Supplemental
Security Income ("SSI") payments. Claimant responded to Defendant's motion and the time for
filing a reply has expired. Accordingly, the pending motions are ripe for adjudication. Having
carefully reviewed the administrative record and the motions and memoranda submitted by the
parties, this Court recommends denying Claimant's Motion for Judgment on the Pleadings,
granting Defendant's Motion for Judgment on the Pleadings and upholding the final decision of
the Commissioner.

## STATEMENT OF THE CASE

Claimant filed an application for DIB and SSI payments on 22 April 2004, alleging
disability beginning 1 January 2004. (R. 46-48, 460-63). Both claims were denied initially and
upon reconsideration. (R. 35-40, 43). A hearing before the Administrative Law Judge ("ALJ")
was held on 21 February 2006, at which Claimant was represented by a non-attorney. (R. 489-

94). On 14 March 2006, the ALJ issued a decision denying Claimant's claims. (R. 18-27). Claimant then requested a review of the ALJ's decision by the Appeals Council (R. 16), and submitted additional evidence as part of her request (R. 461-88). After reviewing and incorporating the additional evidence into the record, the Appeals Council denied Claimant's request for review on 27 March 2008. (R. 6-9). Claimant then filed a complaint in this Court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

In its consideration of the final agency determination, this Court must remain mindful of the standard by which it reviews the administrative decision. *See e.g., Evans* v. *Eaton Corp. Long Term Disability Plan,* 514 F.3d 315, 320-21 (4th Cir. 2008) (citations omitted) (explaining standards of review are an expression of judicial restraint safeguarding the "superior vantage points of those entrusted with primary decisional responsibility."). The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.,* is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen,* 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner...as to any fact, if supported by substantial evidence, shall be conclusive..." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood,* 487 U.S. 552, 565 (1988), it is "more than a mere scintilla...and somewhat less than a preponderance." *Laws,* 368 F.2d at 642. "In reviewing for substantial

2

evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520, 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," *i.e.*, currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform...past work or (5) any other work.

*Albright v. Commissioner of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily

3

living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* §§ 404.1520a(c)(3); 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(2); 416.920a(e)(2).

In this case, Claimant alleges the following errors by the ALJ: (1) failure to evaluate properly Claimant's depression; (2) failure to give controlling weight to the opinion of Claimant's treating physician; (3) improper assessment of Claimant's credibility; and (4) improper assessment of Claimant's residual functional capacity ("RFC"). Pl.'s Mem. in Supp. of Pl.'s Mot. for J. on the Pleadings at 14, 17, 19, 23. ("Pl.'s Mem.").

## FACTUAL HISTORY

### I.   ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 23). Next, the ALJ determined Claimant had the following severe impairments: (1) diabetes mellitus with diabetic peripheral neuropathy and (2) herniated nucleus pulposus. *Id.* The ALJ found further "that all other impairments alleged and found in the record are nonsevere...." (R. 24). However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* In reviewing Claimant's alleged mental impairment and applying the technique prescribed by the regulations, the ALJ found that Claimant's "depression is mild and secondary to her chronic

4

pain" and that she has "no resultant limitations in social functioning, concentration and persistence or daily activities...."(R. 26).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform medium work.[1] (R. 24). In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible. (R. 25). At step four, the ALJ concluded Claimant had the RFC to perform the requirements of her past relevant work as a cashier. (R. 27).

## II. Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 42 years old. Pursuant to Claimant's request, the ALJ agreed to consider as testimony Claimant's written statement dated 21 February 2006 in addition the other "extensive [written] information" contained in the record. (R. 107, 492). Claimant's hearing testimony consisted only of the following: (1) she drives very little and (2) she did not drive to the hearing because she had taken most of her medications that day due to pain. (R. 492-93).

Claimant experiences chronic pain in her lower abdomen secondary to nerve damage that occurred during surgery in 2000. The pain radiates to her back and both legs and feet, making sitting, standing, walking and lifting difficult. In addition to pain medication, Claimant uses liniment, thermal packs, heating pads and a heater/massager and lies down four to five times a day in thirty minute increments. Claimant alleged that pain management provided limited short-term relief only and that pain continues to disrupt her sleep at night. Claimant also experiences

[1] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds. If an individual can perform medium work, he or she can also do sedentary and light work. 20 C.F.R. §§ 404.1567(c), 416.967(c).

5

bladder incontinence, which causes her to rarely leave her home. Claimant previously used an Oxytol patch to treat her overactive bladder symptoms; however, discontinued its use in late 2005 due to her inability to afford it. Finally, Claimant stated she is depressed and listed numerous symptoms of depression, including avoidance of others, lack of energy, feelings of worthlessness, uncontrollable crying, poor sleep, poor memory and concentration. Claimant's husband and son assist with household chores; however, Claimant tries to cook every day, although some days she is unable to do so. (R. 107).

## DISCUSSION

### I.    The additional evidence submitted to the Appeals Council is not material.

The Appeals Council incorporated the following additional evidence into the record: (1) psychological interview conducted by Jennifer W. Williams, M.A., L.P.A., dated 14 December 2006 (R. 464-66); (2) a statement from June Woolard, a licensed clinical social worker, dated 18 March 2008 (R. 488); and (3) progress notes from Ann Nunez, M.D., dated 11 July 2006 to 18 January 2007 (R. 467-81). (R. 9). Although the Appeals Council discounted the additional evidence (R. 7), the Court must review this evidence in determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y, Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991) (explaining where the Appeals Council incorporates additional evidence into the administrative record, the reviewing court must "review the record as a whole, including the new ev idence, in order to determine whether substantial evidence supports the [ALJ's] findings"). However, the claimant must show that the evidence is new, i.e., not duplicative or cumulative of that which is already in the record, and explain how the new evidence relates to the claimant's medical condition as it was at the time of the hearing. 20 C.F.R. §§ 404.970(b),

6

416.1470(b); *see Wilkins*, 953 F.2d at 96 (citations omitted); *see also Eason v. Astrue*, 2008 WL 4108084, at *3 (E.D.N.C. Aug. 29, 2008) (citing *Williams v. Sullivan*, 905 F.2d 214, 216 (8th Cir. 1990)). In this case, the relevant time period extends from 1 January 2004 (Claimant's alleged disability onset date) to 14 March 2006 (the date of the ALJ's decision).

This Court finds Claimant has failed to demonstrate that the additional evidence which she seeks to have considered relates to the time period on or before the ALJ's decision. The December 2006 psychometric evaluation conducted by Ms. Williams revealed "a severe level of depression." (R. 465). Based on that evaluation, a "chart review" and "clinical interview," Ms. Williams concluded that "further exploration of depression is warranted." (R. 464-66). However, this Court is unable to discern whether Ms. Williams relied on evidence in existence during the relevant time period thereby reflecting Claimant's condition at that time. In fact, it appears she relied solely on Claimant's subjective complaints, *see* (R. 464) (noting Claimant's self-report of a history of depression), and the test results conducted during Claimant's December 2006 evaluation - nine months after the ALJ's decision. (R. 464-66). While the additional evidence proffered by Claimant may indicate a degeneration of Claimant's condition, such evidence is not relevant to the present claim for benefits. *See Eason*, 2008 WL 4108084, at *3; *see also Rhodes v. Barnhart*, 2005 U.S. Dist. LEXIS 42876, at *33-34 (W.D.N.C. Mar. 30, 2005), *aff'd*, 176 Fed. Appx. 419 (4th Cir. Apr. 20, 2006) (new evidence must relate to the time period for which benefits were denied and may not merely be evidence of a later-acquired disability or of subsequent deterioration of the previously non-disabling condition) (citing *Raglin v. Massanari*, 39 Fed. Appx. 777, 779 (3d Cir. 2002)).

7

Similarly, the declaration from Ms. Woolard, wherein she opines Claimant "has not been capable of functioning in any work environment on a daily basis...since January 2004" is not material. (R. 488). While Ms. Woolard is neither a medical expert nor an "acceptable medical source," *see* 20 C.F.R. §§ 404.1513(a), 416.913(a), as a social worker, her opinion "may provide insight into the severity of Claimant's impairment and how it affects Claimant's ability to function." Soc. Sec. Rul. ("S.S.R.") 06-03p, 2006 WL 2329939, at *2; *see also* 20 C.F.R. §§ 404.1513(d)(3), 416.913(d)(3) (defining "other sources" as including social welfare agency personnel). In support of her opinion, Ms. Woolard relies on the following: (1) her treatment of Claimant since 27 June 2006, during which she diagnosed Claimant with major depressive disorder, recurrent, severe without psychosis; (2) a disability form completed by Claimant dated 6 December 2005, wherein Claimant described the limitations experienced as a result of her chronic pain; (3) a disability form completed by a Social Security employee dated 22 April 2004 noting the employee's observation that Claimant "was in a daze like stare throughout interview" and "seemed to be spaced out" (R. 62); and (4) the psychological interview by Ms. Williams discussed above. (R. 485-87). However, only the self-report by Claimant and the observations of a Social Security employee were in existence during the relevant time period and neither corroborate Ms. Woolard's medical summaries or conclusion that Claimant is incapable of performing any work. While Ms. Woolard does rely in part on her medical summaries, no information provided in the declaration indicates whether the limitations discussed therein existed on or before the date of the ALJ's decision. *See Eason*, 2008 WL 4108084, at *4 (noting it is claimant's burden of demonstrating that additional supporting materials submitted after the ALJ's decision reflect claimant's condition during the alleged disability period) (citations

8

omitted). While the declaration, like the psychological interview conducted by Ms. Williams, may indicate a degeneration of Claimant's condition, such evidence is not relevant to the present claim for benefits. *See id.* at *3; *see also Rhodes*, 2005 U.S. Dist. LEXIS 42876, at *33.

As for the progress notes by Dr. Nunez, the Court notes that Claimant has not explained the relevance of any of this evidence and in fact, only cites these notes generally for the proposition that Claimant's alleged severe depression pre-dated the ALJ's decision. *See* Pl.'s Mem. at 17. However, upon review of the progress notes, it is evident that Dr. Nunez treated Claimant at a rehabilitation clinic for chronic back, neck and abdominal pain - not for depression. While Dr. Nunez acknowledged Claimant's "history of depression" on several occasions (R. 467, 469, 472, 474, 476) and noted during a June 2006 visit that Claimant sees a psychiatrist for depression (R. 478, 481), she did not cite any treatment notes documenting evidence of depression in existence during the relevant time period reflecting Claimant's condition at that time. Finally, the treatment notes contain no information regarding Claimant's chronic pain condition on or before the ALJ's decision. Claimant's argument is therefore without merit.

## II.     The ALJ properly evaluated the severity of Claimant's mental impairment.

Claimant avers the ALJ's description of Claimant's depression is not supported by the record. Pl.'s Mem. at 14-17.

In order to determine whether the ALJ reached his decision based on substantial evidence, the ALJ must include "in the text of h[is] decision a statement of the reasons for that decision." *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986). Without such a statement of reasons, this Court cannot determine whether the ALJ based a decision on substantial evidence.

9

*See id.*; 5 U.S.C. § 557(c)(3)(A) (requiring decisions to include "a statement of findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record"). Here, the ALJ provided a statement of reasons. While acknowledging that Claimant "endorses symptoms of depression, including low energy, poor memory and concentration, and feelings of worthlessness" the ALJ found that "the objective medical evidence does not fully support [C]laimant's complaints of...significant depression." (R. 25 ¶¶ 1,3). In particular, the ALJ noted (1) the lack of psychiatric treatment or hospitalization; (2) the lack of evidence establishing limitations in social functioning, concentration and persistence or daily activities[2] due to depression; and (3) the December 2004 opinion of Steve Salmony, Ph.D., a state agency consultant, who found Claimant had no medically determinable impairment (R. 391, 405). (R. 26). Accordingly, the ALJ characterized Claimant's depression as "mild and secondary to her chronic pain." (R. 26).

Claimant, however, asserts that the above assessment is inadequate because it (1) gives "[im]proper consideration" to the fact that Claimant takes medication for depression, anxiety and insomnia; (2) "essentially ignores" Claimant's report of symptoms of depression; (3) "does not credit" the November 2004 opinion of Scott Avery, M.D., Claimant's treating physician, that a psychiatrist would be beneficial in treating Claimant's depression (R. 437); and (4) "does not credit" the April 2004 observation of a Social Security employee that Claimant "was in a daze like stare throughout interview" and "seemed to be spaced out" (R. 62). Pl.'s Mem. at 16.

---

[2] In support of his finding that Claimant's "subjective complaints are...inconsistent with her reported daily activities," the ALJ summarized Claimant's Activities of Daily Living Statement, which documents Claimant's ability to perform numerous activities, including "extensive housework," yard work, driving, shopping, taking daily walks and "attend[ing] her son's ball games and practices several times a week." (R. 26, 83, 85).

10

The regulations require the ALJ to consider all evidence in the record when making a disability determination. *See* 20 C.F.R. §§ 404.1520(a)(3), 416.920(a)(3). However, the ALJ is not required to discuss all evidence in the record. *See e.g., Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (explaining there "is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision"); *Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 762 n.10 (4th Cir. 1999) (ALJ need not discuss every piece of evidence in making credibility determination); *Anderson v. Bowen*, 868 F.2d 921, 924 (7th Cir. 1989) (noting "a written evaluation of every piece of testimony and submitted evidence is not required"). Rather, the ALJ must "provide [this Court] with sufficient reasoning for determining that the proper legal analysis has been conducted." *Keeton v. Dept. of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *see also Coffman*, 829 F.2d at 517.

Here, the ALJ's summary of Claimant's medical record "enable[s]...[this Court] to conclude that [the ALJ] considered her medical condition as a whole." *Dyer*, 395 F.3d at 1211. With respect to medication, the ALJ noted that Claimant's other alleged impairments, which includes her depression, "were responsive to medication." (R. 24). Support for this statement appears in Dr. Avery's August 2005 progress note, which lists Claimant's medications, including Wellbutrin and Prozac, and states Claimant is "positive for trouble with depression but she is hanging in there pretty well."[3] (R. 413). Despite Claimant's statement to the contrary, the ALJ discusses specifically Claimant's self-reported symptoms of depression, as detailed above. (R. 25). As for Claimant's reliance on Dr. Avery's November 2004 progress note, Claimant fails to account for Dr. Avery's November 2005 progress note wherein Dr. Avery noted that Claimant,

---

[3] While the ALJ does not reference specifically this page in his decision, he cites Exhibit 22F of which the August 2005 progress note is a part.

11

who continued to take Prozac and Wellbutrin, in fact "denies depression."[4] (R. 445). This evidence supports the ALJ's finding that Claimant's "other alleged impairments," including depression, were not severe in part because they "were responsive to medication." (R. 24); *see Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it not disabling.").

Claimant criticizes further the ALJ's reliance on Dr. Salmony's findings, stating "significant evidence was entered into the record after [December 2004], the date of Dr. Salmony's opinion, thereby making it less worthy of the weight the ALJ assigned it." Pl.'s Response to Def.'s Mot. for J. on the Pleadings at 2 ("Pl.'s Response"). Failing to identify the "significant evidence," Claimant implies that Dr. Salmony's opinion is outdated and thus does not merit determinative weight.[5] *See id.* To the contrary, as noted above, evidence post-dating Dr. Salmony's opinion supports his finding, including the November 2005 progress note discussed wherein Claimant denied depression. (R. 445); *see* S.S.R. 96-6p, 1996 WL 374180, at *1 ("Findings of fact made by State agency...consultants...regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of non-examining sources at the [ALJ] and Appeals Council levels of administrative review."). Claimant's argument is therefore without merit.

---

[4] Again, the ALJ does not reference this page specifically in his decision; however, he cites Exhibit 23F of which the November 2005 progress note is a part.

[5] Quoting S.S.R. 96-6p, Claimant emphasizes that "opinions of State agency ...psychological consultants...can be given weight only insofar as they are supported by evidence in the case record,...*including any evidence received at the [ALJ] and Appeals Council levels that was not before the State agency...consultant*." S.S.R. 96-6p, 1996 WL 374180, at 2; *see* Pl's Response at 2. To the extent Claimant relies on the new evidence submitted to the Appeals Council, Claimant has failed to demonstrate how said evidence relates to the time period on or before the ALJ's decision, as explained above.

12

**III.    The ALJ did not err in evaluating the opinion of Claimant's treating physician.**

Claimant contends the ALJ should have accorded controlling weight to the opinion of Claimant's treating physician, Scott R. Avery, M.D. Pl.'s Mem. at 23-24.

The opinion of a treating physician is generally entitled to great weight. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (per curiam). The underlying rationale is that the opinion of a treating physician "reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Id.* However, appropriate support in the record must warrant deference to the treating physician's opinion. In particular, a treating physician's opinion on the nature and severity of the claimed impairment is accorded controlling weight only when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590; *see also Mastro v. Apfel*, 270 F.3d 171,178 (4th Cir. 2001) (citation omitted) (explaining "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence"). In fact, an ALJ "may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source...if he sufficiently explains his rationale and if the record supports his findings." *Grant v. Astrue*, 574 F. Supp. 2d 559, 564 (E.D.N.C. 2008) (quoting *Wireman v. Barnhart*, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006)). The regulations prescribe factors to be considered in determining the weight to be ascribed, including the length and nature of the

13

treating relationship, the supportability of the opinions, and their consistency with the record. 20 C.F.R. § 404.1527(d)(2)-(6); *see also Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005).

The medical opinion at issue appeared in a letter dated 27 September 2004, wherein Dr. Avery stated Claimant is unable to work due to significant lower abdominal pain and lower extremity weakness. (R. 438). While citing records indicating Dr. Avery's treatment of Claimant since the early 1990s, the ALJ noted Dr. Avery's opinion "is not supported by the medical evidence and is inconsistent with [Claimant's] extensive daily activities." (R. 26). The ALJ explained further that "[t]he opinion appears to be based in large part [on] [C]laimant's own subjective complaints of pain, which [are] only partially credible...." *Id.*

Substantial evidence supports the ALJ's decision to discount Dr. Avery's opinion. The ALJ acknowledged that the record reflects Claimant's complaints of "lower abdominal/pelvic pain extending down her lower extremities." (R. 26, 440, 444). However, the ALJ found that "the medical evidence does not support the alleged severity of these symptoms," and noted in particular the following evidence: (1) November 2002 MRI of Claimant's pelvis which revealed no evidence of residual ovarian tissue and no bladder abnormalities (R. 289, 331); (2) urodynamic testing and a cystoscopy on 11 February 2004 which revealed normal bladder volume and function and no evidence of any lesions in her urethra or bladder, respectively (R. 293); (3) 9 June 2004 examination of Claimant's abdominal area by E.C. Land, M.D., a state agency examining consultant, wherein he noted that Claimant had only "mild diffuse abdominal tenderness" with no organomegaly and no rebound tenderness (R. 371); (4) negative laboratory studies and examinations by Dr. Avery which revealed no evidence of hepatoslenomegaly, masses or hernia (R. 304, 320, 415); and (5) a progress note dated 26 May 2005 wherein Dr.

14

Avery reported that Claimant's pelvic pain was better with medication, she was walking and "all-in-all, she seems to be doing pretty well" (R. 423). (R. 26).

The absence of a sufficient rationale for the opinion and the inconsistency between the opinion and other medical evidence in the record reasonably downgraded the true evidentiary value of Dr. Avery's opinion. Additionally, the ALJ complied with S.S.R. 96-2p by making his decision sufficiently specific for subsequent viewers to understand the weight accorded Dr. Avery's opinion and the reasons for said weight. *See Koonce v. Apfel*, 166 F.3d 1209, 1999 WL 7864, at *2 (4th Cir. 1999) ("An ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up specious inconsistencies or has not giv en good reason for the weight afforded a particular opinion.") (internal citations and quotations omitted). Accordingly, the ALJ was within his discretion in not giving controlling weight to Dr. Avery's opinion; thus, Claimant's argument on this issue is without merit.

## IV. The ALJ properly evaluated the credibility of Claimant's statements.

Claimant contends the ALJ failed to adequately evaluate the credibility of Claimant's testimony. Pl.'s Mem. at 19-22.

Upon establishing the existence of a medically-determinable physical or mental impairment that could reasonably be expected to produce the claimant's symptom(s), the ALJ must evaluate the intensity, persistence and limiting effects of said symptom(s) on a claimant's ability to perform basic work. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1); S.S.R. 96-7p, 1996 WL 374186, at *1; *see Craig*, 76 F.3d at 595. This evaluation requires the ALJ to determine the degree to which the claimant's statements regarding symptoms and their functional effects can be

15

believed and accepted as true; thus, the ALJ must consider conflicts between the claimant's statements and the rest of the evidence. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); S.S.R. 96-7p, 1996 WL 374186, at *4. A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). In assessing credibility, the ALJ must consider the entire case record, provide specific reasons for the credibility finding and ensure the weight accorded (and reasoning for said weight) to the claimant's statements is evident to the claimant and any subsequent reviewers. S.S.R. 96-7p, 1996 WL 374186, at *4; *see Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985); *Newton v. Astrue*, 559 F. Supp. 2d 662, 673 (E.D.N.C. 2008). In addition to the objective medical evidence, the ALJ's evaluation of a claimant's credibility must include the following factors:

    (1)    effect of symptoms on claimant's daily activities
    (2)    location, duration, frequency and intensity of the symptom(s)
    (3)    factors that precipitate or aggravate claimant's symptoms
    (4)    type, dosage, effectiveness and side effects of medication taken to alleviate the symptom(s)
    (5)    non-medical treatment received for relief of the symptom(s)
    (6)    any non-treatment measures used to relieve the symptom(s)
    (7)    other factors concerning functional limitations and restrictions due to the symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); S.S.R. 96-7p, 1996 WL 374186, at *3; *see Hyatt v. Heckler*, 711 F. Supp. 837, 848 (W.D.N.C. 1989), *aff'd in part, amended in part, vacated in part*, 899 F.2d 329 (4th Cir. 1990).

After reviewing the ALJ's decision, this Court finds the ALJ made the necessary findings in support of his credibility determination pursuant to the framework explained above. *See*

16

*Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (an ALJ's observations regarding credibility should be given great weight). Regarding objective evidence, the ALJ summarized Claimant's medical records as to each impairment. With respect to Claimant's back impairment, the ALJ cited findings by Dr. Scot Reeg, a consulting spinal surgeon, including a lack of motor or sensory deficits, a full range of motion of the lumbar spine and negative straight leg raising in the seated position (R. 25, 290). The ALJ cited further findings by Dr. Land, including a lack of muscle atrophy in the upper and lower extremities, full range of motion in the cervical spine and an inability to bend more than 50-60 degrees anteriorly at the waist.[6] (R. 25, 371). The ALJ noted also findings by Lyn Johnson, M.D., of the Pitt County Memorial Hospital Pain Clinic, including negative straight leg raising, an ability to rise from a seated to standing position without difficulty and to walk with only a slight antalgic gait.[7] (R. 25, 407). Finally, the ALJ considered diagnostic evidence, including nerve conduction studies showing no evidence of lumbosacral radiculopathy, polyneuropathy, lumbosacral plexus neuropathy or mononeuropathy (R. 282-84, 287) and an MRI revealing only a small disk herniation at L5-S1 without stenosis (R. 289). (R. 25). As for Claimant's diabetes, the ALJ noted it is subject to improvement with dietary control, weight loss and oral medications. (R. 26, 445-46, 451-52). As previously

---

[6] Claimant faults the ALJ for failing to note Dr. Land's finding that Claimant was unable to tandem walk. As stated earlier, the ALJ is not required to "specifically refer to every piece of evidence in his decision." *Dyer*, 395 F.3d at 1211. Moreover, Claimant does not explain how the inability to tandem walk impacts her work-related abilities.

[7] The ALJ references also records dated May 2005 from Phil Harris, M.D., who evaluated Claimant for dyspnea. (R. 25, 409-12). While the Court acknowledges that Claimant did not see Dr. Harris regarding back pain, his records indicate nonetheless a plenary review of Claimant's systems and findings that include no joint pain, swelling or myalgias, no objective signs of weakness and no gross motor or sensory deficits. (R. 409, 411).

17

discussed, the ALJ discussed also objective evidence regarding Claimant's depression and chronic lower abdominal and pelvic pain. (R. 26).

In addition to the objective medical evidence, the ALJ considered also the factors set forth in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) as referenced above. *See* S.S.R. 96-7p, 1996 WL 374186, at \*6 ("[T]he absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms is only one factor that the [ALJ] must consider in assessing an individual's credibility and must be considered in the context of all the evidence."). In particular, the ALJ's decision cites the following evidence in evaluating Claimant's credibility: (1) Claimant's daily activities, including daily walks, bed-making, sweeping, dusting, vacuuming, cooking, laundry, dish washing, and "attend[ing] her son's ball games and practices several times a week"[8] (R. 26, 83, 85); (2) Claimant's chronic lower back pain with radiation of pain, numbness and tingling to her bilateral lower extremities (R. 24) and chronic lower abdominal and pelvic pain extending down her lower extremities (R. 24, 26); (3) Claimant's testimony that her abdominal pain makes sitting, standing, walking and lifting difficult; (4) epidural steroid injections in the lumbar spine,[9] Claimant's decline of Dr. Johnson's offer to refer her to a spinal surgeon for evaluation, improvement of pelvic pain with

---

[8] Claimant faults the ALJ for failing to "mention any of the limitations she described in performing [the listed daily] activities, such as having to sit on a stool while cooking or having to sit down after vacuuming one room." Pl.'s Mem. at 21. However, the ALJ's decision discusses explicitly Claimant's Activities of Daily Living Statement, of which the above evidence is a part. *See Dyer*, 395 F.3d at 1211.

[9] Claimant faults the ALJ for failing to mention her "poor response" to the epidural steroid injections. Pl.'s Mem. at 22; (R. 407). Claimant's allegation is unfounded. Upon acknowledging Claimant's injections in July and August 2004 (R. 25, 381-82), the ALJ discussed Claimant's return visit to the pain clinic in November 2004 for radiating back pain. (R. 25, 406-08). Moreover, the ALJ noted Dr. Johnson's offer to refer Claimant to a spinal surgeon for evaluation and Claimant's refusal thereof. (R. 25, 406).

18

medication, lack of evidence supporting Claimant's alleged adverse side effects of medication (R. 25-26, 381-83, 406); (5) Claimant's treatment at a pain clinic (R. 25, 381-89, 406-08); (6) Claimant's testimony that conservative pain treatments have provided only limited short-term relief[10] (R. 26, 107) and (7) Claimant's statement that pain continues to disrupt her sleep at night. (R. 26, 107).

The ALJ properly evaluated Claimant's subjective accounts of her symptoms with the objective medical evidence presented and did not err in finding that Claimant's statements were not entirely credible. The evidence provides sufficient grounds for the ALJ's conclusion that Claimant's subjective account of her limitations was inconsistent with available objective evidence. In short, the ALJ comported fully with the credibility evaluation prescribed by Social Security Ruling 96-7p by making findings, supported by reasons, with respect to Claimant's alleged symptoms, the medical record and Claimant's own testimony. *See Mickles v. Shalala*, 29 F.3d 918, 929 (4th Cir. 1994) ("Subject only to the substantial evidence requirement, it is the province of the [ALJ], and not the courts, to make credibility determinations."). For the foregoing reasons, Claimant's argument as to this issue is without merit.

_____

[10] Claimant opines that the ALJ failed to consider the non-medical treatment used by Claimant "to alleviate her pain, including thermal packs, heating pads, a heater/massager and lying down four to five times a day for about 30 minutes to an hour at a time." Pl.'s Mem. at 22 (citing Statement of Bobbie White, Ex. 10E). The Court disagrees. In summarizing Claimant's written testimony, the ALJ noted Claimant's allegation that "conservative pain treatments have provided only limited short-term relief of symptoms to date...." (R. 25). While Claimant points out correctly that the ALJ did enumerate explicitly the non-medical treatment measures used by Claimant for relief of her pain, his characterization of such measures as "conservative pain treatments," combined with the concise summary of her written testimony, indicates his consideration of the specific non-treatment measures employed by Claimant.

19

**V.     The ALJ properly assessed Claimant's RFC.**

Claimant contends the ALJ failed to accurately describe Claimant's RFC.  Pl.'s Mem. at 17-19.  This Court disagrees.

The RFC is an administrative assessment of "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis" despite impairments and related symptoms.  S.S.R. 96-8p, 1996 WL 374184, at *1; *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  In determining the RFC, the ALJ considers an individual's ability to meet the physical, mental, sensory and other requirements of work.  20 C.F.R. §§ 404.1545(a)(4), 416.945(a)(4).  It is based upon all relevant evidence and may include a claimant's own description of limitations arising from alleged symptoms.  20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5.  Finally, the RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p, 1996 WL 374184, at *7.

Claimant's argument regarding the ALJ's alleged failure to consider the cumulative effects of her impairments merits little discussion, as "[s]ufficient consideration of the combined effects of a [claimant's] impairments is shown when *each is separately discussed in the ALJ's decision*, including discussion of a [claimant's] complaints of pain and level of daily activities." *Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) (emphasis added) (citations omitted), *aff'd* 179 Fed. Appx. 167 (4th Cir. 2006) (unpublished per curiam).  Here, the ALJ acknowledged Claimant's complaints of back, abdominal and pelvic pain, depression and

20

diabetes.[11] Moreover, the ALJ's decision indicates that he considered all of Claimant's mental and physical limitations together before determining Claimant maintained the RFC to perform medium work. As discussed above, the ALJ's opinion provides a review of Claimant's medical records and statements by Claimant found to be credible. The ALJ's RFC determination finds accord with the opinions of a state agency non-examining medical consultants (R. 26, 373-80, 390). Finally, in compliance with S.S.R. 96-8p and as discussed in detail above, the ALJ explained his resolution of the opinion by Claimant's treating physician and its lack of support and inconsistency with the medical evidence as a whole. (R. 26).

Based on the foregoing, this Court finds that the ALJ's RFC determination is supported by substantial evidence. The ALJ analyzed all of the relevant evidence, sufficiently explained his findings and his rationale in crediting the evidence and applied the correct legal standards in evaluating Claimant's RFC. Accordingly, Claimant's argument as to this issue is without merit.

## CONCLUSION

For the reasons stated above, this Court RECOMMENDS Claimant's Motion for Judgment on the Pleadings be DENIED, Defendant's Motion for Judgment on the Pleadings be GRANTED and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten (10) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by

---

[11] Claimant faults the ALJ for failing "to note that Dr. Harris felt a referral for evaluation of myasthenia gravis was warranted." Pl.'s Mem. at 19. Claimant cites no other medical records indicating treatment for this condition. Moreover, Claimant has alleged no limitation as a result of this condition. *See also* 20 C.F.R. §§ 404.1512(c), 416.912(c) ("[Claimant] must provide evidence...showing how the impairment(s) affects...functioning....").

the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This, the 16th day of January, 2009.

Robert B. Jones, Jr.
United States Magistrate Judge